THOMPSON, Judge.
Appellant/Former Wife (“Hinsley”) appeals from the trial court’s final order that continued a mutual restraining order issued pursuant to Appellee/Former Husband’s (“Whited”) petition for modification of final judgment of dissolution of marriage and mutual restraining order. We reverse the trial court and dissolve the injunction.
Hinsley and Whited were married in 1982. They had two children as a result of the marriage. In 1990, the parties signed a marital settlement and shared parenting agree *612 ment. The agreement stated they were to have shared parental responsibility, as set out by section 61.13(2), Florida Statutes (1989). Hinsley received primary physical residence of the two children and Whited received liberal visitation set by schedule. He was also to pay child support in an amount to be set by the court. Each party was to inform the other of the children’s whereabouts when the children were out of the Central Florida area. This agreement was incorporated into the final judgment of dissolution of marriage on 7 March 1990. A child support payment of $150.00 per week was ordered by the court.
On 5 April 1992, Whited petitioned the court for an ex parte emergency mutual restraining order to prevent Hinsley from removing the children from the state of Florida and relocating to North Carolina. Hinsley had remarried and her husband was being transferred to North Carolina. She had written Whited on 1 April 1992 and explained that she wanted to move and requested that he work with her to reach some mutually agreed change in visitation to allow him contact with the children, yet allow the children to move. The move meant a $10,000.00 increase in salary for her new husband and guaranteed employment for a minimum of 4 to 6 years and a maximum of 10 to 15 years. If he remained in Orlando, there would be a substantial possibility that he would lose his job at Martin Marietta because of defense budget cutbacks.
Whited filed a petition for modification of final judgment of dissolution of marriage on 6 April 1992. He sought primary residential responsibility for the two minor children because his right to visitation would be seriously impacted if the children moved to North Carolina. An emergency mutual restraining order was entered preventing either party from removing the children from the state of Florida. Hinsley filed her affirmative answer to the petition and filed a motion for contempt because Whited was $5,443.82 in arrears in his child support. She also alleged that because of Whited’s failure to pay child support, she was financially dependent on her new husband’s income for the support of the children. A trial on the issues was held on 4 September 1992. There was testimony presented that Whited did visit with the children on a regular basis and the only reason for the move to North Carolina was the change in employment of Hinsley’s new husband. There was also testimony presented that Hinsley was willing to increase summer visitation, Christmas visitation and spring break visitation so the children could spend additional time with Whited. This proposed modification of the structured visitation was not acceptable to Whited.
The trial court, by order dated 26 September 1992, denied the petition for modification of the final judgement finding no substantial change in circumstances. The trial court also found Whited in contempt of court for failing to pay child support in the amount of $5,443.82. The emergency mutual restraining order, however, was allowed to “remain in full force and effect.” Hinsley appeals the continuation of the restraining order.
The trial court is reversed and the emergency mutual restraining order is dissolved because the order did not comply with the rules of procedure. The emergency mutual restraining order was extended improperly after the ease was heard on the merits. Shea v. Central Diagnostic Services, Inc., 552 So.2d 344 (Fla.1989). An emergency restraining order, an injunction in this case, entered pursuant to Florida Rules of Civil Procedure 1.610, must state an amount of bond sufficient to cover the adverse party’s costs and damages and the reasons for entry or continuation of the injunction unless it is “issued solely to prevent physical injury or abuse of a natural person.” Fla.R.Civ.P. 1.610(b). There is no allegation of physical abuse in this ease. The trial court enjoined both parties from removing the children from the state of Florida, but did not state the reason or reasons why the injunction was necessary. Specifically, the paragraph detailing the rationale of the court reads in its entirety:
The Husband and Wife are mutually enjoined from removing or causing the removal of TENNILLE LANEE WHITED, born July 28, 1985, and CASSIDY SHEA WHITED, born March 22, 1987, from the State of Florida. Any such removal of the *613 parties’ minor children shall subject the party violating this order to the consequences of the felony statutes of this state.
This is the form of the order entered on 6 April 1992 and of the court order continuing the injunction on 26 September 1992. An injunction prohibiting the removal of a child will be reversed if the trial court does not support the order with competent evidence. Bergman v. Bergman, 434 So.2d 1037, 1038 (Fla. 3d DCA 1983). Additionally, an injunction will be reversed if the posting of a bond is not provided for or if reasons are not given for waiving this requirement. E.g., Layne & Brill, P.A. v. Brill, 453 So.2d 890 (Fla. 3d DCA 1984); Crow, Pope & Carter, Inc. v. James, 349 So.2d 827 (Fla. 3d DCA 1977). There was no specific prohibition against moving the children in the final judgment, and the court’s only stated reason for preventing the children from leaving was the court’s reliance upon previous rulings by this court.
The trial court relied upon this court’s ruling in Mize v. Mize, 589 So.2d 959 (Fla. 5th DCA 1991), jurisdiction accepted, 601 So.2d 553 (Fla.1992) as the legal basis for continuing the emergency mutual restraining order. The trial court stated this decision was based solely upon the Mize case. Since the date of the hearing, the Florida Supreme Court has quashed this court’s ruling in Mize. Mize v. Mize, 621 So.2d 417 (Fla.1993). The supreme court has adopted the test articulated by Judge Schwartz in Hill v. Hill, 548 So.2d 705 (Fla. 3d DCA 1989), review denied, 560 So.2d 233 (Fla.1990). Therefore, it is permissible for a custodial parent to petition the court to remove a child from the state “for a well-intentioned reason ... rather than from a vindictive desire to interfere with the visitation rights of the other parent.” Mize, 621 So.2d at 421. The only issue pending before this court has been resolved. Hinsley did not petition the trial court to remove the children from the state and relocate to North Carolina. That issue is not before this court, therefore, no prospective ruling of this court can be entered on the trial court’s review of a petition not yet filed. However, the trial court should carefully review the facts of this case which detail Hinsley’s change in circumstances, the offer of Hinsley to substantially modify visitation and the statewide criteria as enunciated by the supreme court in Mize, before reaching a decision that is in the best interest of the children.
The trial court is reversed and the emergency restraining order is dissolved.
HARRIS, C.J., and GOSHORN, J., concur.