PER CURIAM.
A party appeals the setting of an injunction bond after it successfully obtained a temporary injunction. We affirm the injunction, but reverse the bond based upon our conclusion that the proper procedure was not followed in setting the bond.
Appellee 82 SL Associates of Florida (SL Associates) is the owner of a shopping center in Opa Locka. Since 1985, appellant AOT, Inc. has operated the 188rd Street Flea Market in the shopping center, occupying space pursuant to a sublease from SL Associates’ immediate lessee, F.W. Woolworth. In May of 1994, SL Associates leased space in the shopping center, directly adjacent to AOT’s premises, to appellee Holy Flea Market, Inc., who planned to open and operate a flea market there. AOT believed that the lease to Holy Flea Market violated certain provisions of Woolworth’s main lease with SL Associates. AOT filed a complaint seeking a temporary injunction to prevent Holy Flea Market from opening for business until AOT’s rights under Woolworth’s main lease could be determined.
On November 22, 1994, Judge Friedman held a hearing on the issuance of a temporary injunction. At this non-evidentiary hearing, Judge Friedman concluded that a temporary injunction was in order. However, he stated that he needed to hear evidence before setting an injunction bond. Immediately following this statement, counsel for both sides began to speculate as to potential damages which needed to be considered in setting the bond. During the course of this discussion, Judge Friedman stated that he would set the bond at one million dollars, but allow AOT to seek a reduction of this amount by presenting evidence to Judge Greenbaum the following week. Judge Friedman did not actually enter the injunction, but stated that either he or Judge Greenbaum would sign it at a later date.
A second hearing was held before Judge Friedman on December 2, 1994, because AOT wanted to expedite the setting of the bond and the imposition of the injunction. At this hearing, Judge Friedman stated that he thought a one million dollar bond was reasonable, but was willing to hear evidence regarding a lower bond amount. However, SL Associates was not present at this hearing, so the matter had to wait until a later hearing before Judge Greenbaum.
When the matter came before Judge Greenbaum on December 7, 1994, he treated the hearing as a motion to reduce bond, and stated that he would hear evidence and consider reducing the bond from one million *478 dollars. AOT put on evidence relating to start-up expenses incurred by Holy Flea Market, and subleases entered into between Holy Flea Market and vendors who had already rented booths. AOT’s evidence also focused upon when Holy Flea Market may have become aware of AOT’s claim of a breach of Woolworth’s main lease, as AOT argued that this would have an impact on potential damages. Neither SL Associates nor Holy Flea Market had an opportunity to present evidence. By order dated December 7, 1994, Judge Greenbaum found that AOT had failed to demonstrate any facts or present any evidence which required that the one million dollar bond be reduced. AOT now appeals from this non-final order in case number 95-31. The injunction was later signed by Judge Friedman on January 8, 1995. AOT also now appeals from this order in case number 95-254, and we consolidated the cases. See Fla.RApp.P. 9.130(a)(3)(B).
Neither SL Associates nor Holy Flea Market has challenged AOT’s entitlement to the injunction, and we therefore affirm the granting of the injunction.
AOT has, however, challenged the setting of the amount of the bond at one million dollars. “No temporary injunction shall be entered unless a bond is given by the movant in an amount the court deems prop-er_” Fla.R.Civ.P. 1.610(b); Hinsley v. Whited, 623 So.2d 611, 612-13 (Fla. 5th DCA 1993); Minimatic Components, Inc. v. Westinghouse Elec. Corp., 494 So.2d 303, 304 (Fla. 4th DCA 1986); Barnett v. Bacardi, 394 So.2d 1108, 1108 (Fla. 3d DCA 1981). An injunction bond secures the enjoined party against any damages it may incur if the injunction turns out to have been wrongfully entered. Neal v. Neal, 636 So.2d 810, 813 (Fla. 1st DCA 1994); Shea v. Central Diagnostic Servs., Inc., 552 So.2d 344, 346 (Fla. 5th DCA 1989). The bond also serves as a cap on any damages which may later be assessed. Parker Tampa Two, Inc. v. Somerset Dev. Corp., 544 So.2d 1018 (Fla.1989); Town of Davie v. Sloan, 566 So.2d 938, 939 (Fla. 4th DCA 1990); Tabsch v. Nojaim, 548 So.2d 851, 853 (Fla. 3d DCA 1989).
Before setting a bond, a trial court must have some basis for exercising its discretion in determining the amount of the bond. In the usual case, the basis for this determination will be evidence provided to the court by the parties. See Resorts Management, Inc. v. Olsen, 651 So.2d 194 (Fla. 2d DCA 1995) (trial court must allow both sides an opportunity to present evidence as to the appropriate amount for an injunction bond); Richard v. Behavioral Healthcare Options, Inc., 647 So.2d 976, 978 (Fla. 2d DCA 1994) (“Since damages recoverable for wrongfully obtaining an injunction are limited to the amount of the injunction bond, the court must provide both parties the opportunity to present evidence as to the amount of an appropriate bond.”); Longshore Lakes Joint Venture v. Mundy, 616 So.2d 1047, 1047-48 (Fla. 2d DCA 1993) (“[T]he court must provide both parties the opportunity to present evidence as to the amount of an appropriate bond.”); SeaEscape, Ltd., Inc. v. Maximum Mktg. Exposure, Inc., 568 So.2d 952, 955 (Fla. 3d DCA 1990) (trial court erred in failing to conduct an evidentiary hearing on a motion to increase an injunction bond); see also Glusman v. Warren, 413 So.2d 857, 858 (Fla. 4th DCA 1982) (the setting of a lis pendens bond without any evidentiary basis was a departure from the essential requirements of law; case remanded for evidentiary hearing on bond amount). In some instances, the bond determination may initially be made based upon only the “good faith representations” of counsel, subject to a later modification. See Parker Tampa Two, 544 So.2d at 1021 (bond amount may be based upon “good faith representations” of counsel); Cushman v. Wakefield, Inc. v. Cozart, 561 So.2d 368, 370 (Fla. 2d DCA 1990) (“A trial court initially sets the amount of an injunction bond based in part upon the good faith representations of the parties.”).
In this case, the one million dollar bond was not based upon either evidence or “good faith representations” of counsel. The transcript of the November 22nd hearing clearly indicates that the one million dollar figure was initially suggested by Judge Friedman, as an accommodation to AOT, in order to expedite entry of the injunction. At no time did SL Associates present any evidence of its potential damages before either *479 Judge Friedman or Judge Greenbaum. No evidence at all was heard by Judge Friedman, and Judge Greenbaum erroneously, but understandably, treated the December 7th hearing as a proceeding to reduce bond, rather than to set bond.
Consequently, the bond in this case was never properly set, and therefore, must be reversed. See Andre Pirio Assocs., Inc. v. Parkmount Properties, Inc., N.V., 453 So.2d 1184, 1187 (Fla. 2d DCA 1984) (setting a bond in an obviously speculative manner is an abuse of discretion). Should SL Associates or Holy Flea Market desire that a bond be posted, they may so move the trial court, which shall then conduct an evidentiary hearing before setting the bond anew. If this hearing occurs, all interested parties shall have an opportunity to present evidence regarding whatever potential damages may be incurred if the injunction is later deemed wrongful.
Affirmed in part, reversed in part.